# IN THE COURT OF APPEALS OF IOWA

No. 17-1058
Filed March 7, 2018

**IN THE INTEREST OF E.T.,**
**Minor Child,**

**M.T., Mother,**
  Petitioner-Appellee,

**J.T., Father,**
  Respondent-Appellant.
_____

  Appeal from the Iowa District Court for Clay County, Charles K. Borth, District Associate Judge.

  A father appeals the juvenile court's termination of his parental rights in a private termination action. **AFFIRMED.**

  Bethany J. Verhoef Brands of Brands Law Office, Spirit Lake, for appellant father.

  Matthew G. Sease of Kemp & Sease, Des Moines, and John M. Sandy of Sandy Law Firm, P.C., Spirit Lake, for appellee mother.

  James C. Hastings, Okoboji, guardian ad litem for minor child.

  Considered by Danilson, C.J., and Vaitheswaran and Bower, JJ.

**BOWER, Judge.**

A father appeals the juvenile court's termination of his parental rights in a private termination action. We find there is sufficient evidence in the record to show the father abandoned the child. Also, termination is in the child's best interests. We affirm the juvenile court.

## I.      Background Facts and Proceedings

The mother and father were married in October of 2009. E.T. was born in 2010. The parents' marriage was dissolved in January of 2013. In August 2013 a Child in Need of Assistance (CINA) petition was filed regarding safety concerns, as the father had left E.T.'s half-brother unsupervised in order to visit his girlfriend. The father had previously been arrested in 2011 for false imprisonment and assault, and in 2013 for disorderly conduct, child endangerment, criminal mischief, operating while intoxicated, and two violations of no-contact orders.

The father did not attend any review hearings in the CINA case. Contact between E.T. and the father was limited and sporadic. However, as the CINA matter progressed and a petition to terminate parental rights was filed by the State, the father became more active and made significant progress toward the goals set by the court. Ultimately, the father's parental rights were not terminated, and the CINA was dismissed in 2015.

In March 2016, the father filed for the initiation of contempt proceedings against the mother for obstructing visitation. The district court denied the petition. The father again filed for contempt proceedings five days later. The mother filed a request for modification at the same time. The district court found

the mother in contempt for denying visitation, but allowed her to purge the contempt if she followed a transitional visitation schedule. The mother and father engaged in mediation and reached a temporary visitation schedule. The court order allowed the mother to restrict the father's visitation if he engaged in criminal behavior.

However, the father began to abuse alcohol again. His paramour filed for a protective order alleging domestic abuse and sexual assault. The father quit his job in August of 2016. In November of 2016, the father was charged with domestic abuse by strangulation causing injury. The case was pending at the time of termination. While under a no-contact order against the domestic-abuse victim, the father allegedly broke into the victim's home in the middle of the night while she and her two children slept and while there threatened her, made crude comments, assaulted her, and raped her. The victim's son eventually called the police. The father was charged with violation of a no-contact order, first-degree burglary, and third-degree sexual abuse. These charges were also pending at the time of the termination.

While the father's destructive and unacceptable behavior increased, he significantly decreased his contact with E.T. The mother estimates the father has seen E.T only thirty times during the course of his life. The last in-person contact was in October 2016. The father has also had limited contact with E.T. over the telephone.

The mother filed a petition for termination of the father's parental rights. A termination hearing was held May 16, 2017. The juvenile court found the father had abandoned E.T. and terminated his parental rights. The father now appeals.

## II.      Standard of Review

Our review in matters pertaining to termination of parental rights under Iowa Code chapter 600A (2017) is de novo.  *In re D.E.E.*, 472 N.W.2d 628, 629 (Iowa Ct. App. 1991).  In cases tried in equity, we give weight to the factual findings of the district court but are not bound by them.  Iowa R. App. P. 6.904(3)(g).  In termination proceedings, our paramount consideration is the best interests of the child.  Iowa Code § 600A.1.

## III.      Abandonment

The father's parental rights were terminated pursuant to Iowa Code section 600A.8(3)(b).  Under this section:

> If the child is six months of age or older when the termination hearing is held, a parent is deemed to have abandoned the child unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means, and as demonstrated by any of the following:
> (1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.
> (2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.
> (3) Openly living with the child for a period of six months within the one-year period immediately preceding the termination of parental rights hearing and during that period openly holding himself or herself out to be the parent of the child.

*Id.* § 600A.8(3)(b).

The father claims he did not abandon E.T. because the mother obstructed his access to the child.  E.T. was seven years old at the time the father's rights were terminated.  The juvenile court found the mother's statement E.T. has only seen his father thirty times in his life to be credible.

The father claims the mother would not permit him to have phone contact with E.T. He points to a single text message where, in response to a demand for a telephone call, the mother stated, "Well the world doesn't revolve around you or your schedule just because [you] say jump doesn't mean I say how high . . . We are busy he will call when he has time." The mother presented evidence the only telephone contact was one call in 2016. We also find the mothers evidence to be credible and find the father did not attempt to have regular meaningful contact with E.T.

The father clearly did not visit E.T. at least once monthly when able to do so. However, the father also claims the mother refused to allow visitation with E.T. The evidence presented at the termination hearing shows the mother had previously interfered with visitation and in doing so, was found to be in contempt. The mother remedied the contempt by fully implementing the transitional visitation plan. The father was then charged in connection with several crimes, including assault and sexual abuse. The mother was well within her rights under the court's order to withhold visitation. The father was in jail for a number of months but even when not, he made no effort to visit E.T. The father "may not use his incarceration as a justification for his lack of relationship with the child." *In re M.M.S.*, 502 N.W.2d 4, 8 (Iowa 1993). We find the juvenile court properly found the father abandoned E.T.

## IV. Best Interests

As a result of the limited visitation or contact he has had with the father, E.T. has shown anxiety, distraction, instances of developmental regression, and suffered in school. The juvenile court found the father's life "has again spiraled

out of control, and whatever minimal relationship he had with [E.T] has again suffered because of it. . . . [E.T.] deserves to suffer no more from that instability caused by [the father] being a tangential part of his life." We agree with the juvenile court and find the stability and permanency achieved by terminating the father's rights is in E.T.'s best interests.

**AFFIRMED.**